PARK ELM HOMEOWNER'S
ASSOCIATION, Respondent,

v.

Beatrice J. MOONEY, Appellant.

No. C7–86–1417.

Court of Appeals of Minnesota.

Jan. 6, 1987.

James A. Stein, Hessian, McKasy & Soderberg, St. Paul, for respondent.

Richard B. Peterson, Donald W. Niles, Doherty, Rumble & Butler, St. Paul, for appellant.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

Beatrice Mooney moved the trial court to vacate, under Minn.R.Civ.P. 60.02(4), a previous judgment granting Park Elm Homeowners Association ownership of property extending from the high-water mark of Mooney's beachfront lot to the edge of Lake St. Croix and awarding the Association judgment against Mooney for assessments charged against her property. The motion was denied. We reverse and remand.

## FACTS

Appellant Beatrice Mooney is the owner and occupant of a beachfront lot on Lake St. Croix, a widening of the St. Croix River. Her lot is one of six which together make up "Park Elm," a platted subdivision of the Village of Lake St. Croix Beach in Washington County. The Park Elm Homeowners Association is a properly recorded, duly organized and legally constituted homeowner's association consisting of the six Park Elm landowners, including Mooney.

All of the Association members are subject to the provisions of the Association's articles, bylaws and covenants. Those documents authorize the Association to make capital improvements and maintain certain common areas and to pay for such expenditures by charging assessments against all of the Association members in equal shares. On August 15, 1984, the Association served a summons and complaint upon Mooney, alleging that she was in arrears for assessments in the amount of $2,204.47. Mooney brought counterclaims for trespass and nuisance, alleging that the Association members were trespassing on her beach property. At trial the Association defended against the counterclaims by alleging that Mooney's title reached only as far as the high-water mark and that the land be-

low that mark was available for the use and enjoyment of all the Association members. Mooney's attorney presented nothing to counter the Association's argument.

The trial court adopted the Association's proposed findings of fact, which indicated that the Association had "used and identified as a common beach" the beach adjacent to Mooney's property and that Mooney had "no exclusive ownership right to said property." From these findings, the court concluded that the Association owned and had the right to reasonable use and enjoyment of the property extending from the high water mark of Mooney's lot to the edge of the river and entered judgment accordingly. The judgment also ordered Mooney to pay the assessments charged by the Association plus interest, attorney's fees, costs and disbursements, for a total of $3,930.20.

Mooney's attorney moved for a new trial under Minn.R.Civ.P. 59 on or about May 7, 1985. Because the motion was untimely, it was never ruled on. Mooney then retained a second attorney, who filed a motion to vacate the judgment under Minn.R.Civ.P. 60, but failed to cite any authority for the motion other than the state constitution. This motion was denied. Mooney then retained her present attorneys, who on April 15, 1986, filed a motion under Minn.R. Civ.P. 60.02 and Minn.Stat. ch. 508 requesting the court to vacate the judgment and to direct the Washington County Registrar of Titles to delete from Mooney's torrens title the memorial indicating the judgment's existence. This motion was denied without comment, and Mooney appeals pursuant to Minn.Stat. § 508.29 (1984).

The Association moved this court to dismiss Mooney's appeal, but the motion was denied by order dated September 16, 1986, which stated that an order pursuant to Minn.Stat. ch. 508 is appealable of right. Minn.Stat. §§ 508.29(3) and (4) (1984).

## ISSUES

1. Did the trial court err in determining that the Association owned the property between the high-water mark of Mooney's

lot and the edge of the lake and, if so, was the judgment void for the purposes of Minn.R.Civ.P. 60.02(4)?

2. Was that part of the trial court judgment ordering Mooney to pay the assessments charged against her by the Association void for the purposes of Minn.R.Civ.P. 60.02(4)?

## ANALYSIS

### I

■ Mooney alleges that the original trial court judgment was void in that it altered her torrens title in derogation of the Torrens Act, Minn.Stat. ch. 508, by granting the Association ownership of the land from the high-water mark on Mooney's lot to the St. Croix. The Association argues that because Mooney's title did not extend past the high-water mark, it was not affected by the judgment. Thus, we must determine initially whether Mooney's property ends at the high-water mark or extends all the way to the St. Croix.

Mooney's property was registered through a torrens decree in 1975. The certificate of title shows that Mooney is the registered owner of Lot 6, Block 2, "Park Elm." The drawing of this plat shows that Lot 6 is one of three lots therein which have been platted all the way to the edge of Lake St. Croix. All information on the plat drawing is consistent with Lot 6 being platted to the edge of the water as it existed at that time. The easterly line of Lot 6 is an irregular line, as would be the case with a water boundary. The dimensions along the north and south lines of Lot 6 contain a plus or a minus distance to the water. The very small printing on the plat reads, "Water Surface Elevation 677.94 (11–8–72)." All of these facts are consistent with the surveyor platting to the edge of the St. Croix as it then existed. More significantly, the drawing does not show any strip of land between Lot 6 and the St. Croix.

The first memorial on Mooney's certificate of title further supports her position that Lot 6 extends to the edge of the St. Croix. This memorial is of the order and decree of registration filed when the land was first registered. It recites the existence of a mortgage against the land and then states that Lot 6 is

[s]ubject to the proprietary and sovereign rights of the State of Minnesota in all that portion of the land lying below the natural ordinary high-water mark of the St. Croix River; not intending, however, to deprive the fee owners of the usual riparian rights that attach to the land riparian to a navigable public body of water incident to the ownership thereof.

The general rule concerning the rights of a riparian landowner in this state is well settled. "The riparian owner's title extends to the low-water mark." *State v. Slotness*, 289 Minn. 485, 486, 185 N.W.2d 530, 532 (1971). "His main right—on which other rights depend and which often constitutes the principal value of property so situated—is an exclusive right of access to the water in front of his land." *Id.* at 487, 185 N.W.2d at 532. Thus, the above language in the memorial indicates that the State did not intend to deprive Mooney of her title extending to the low-water mark.

The Association asserts that Mooney's title extends only to the high-water mark of the St. Croix. This contention rests primarily on the Association's interpretation of the legal description contained in the dedication clause of the plat of Park Elm. It is true, as the Association points out, that the description goes "to the high-water line on the West shore of Lake St. Croix." However, the next "call" goes "thence Northerly *along the lake shore* to a point 1,417.6 feet South of the North line of said section" (emphasis added). These two calls are inconsistent, because the first goes to the high-water line and the second proceeds along the lake shore for a certain distance. The reference to the lake shore clearly means along the current edge of the water and does not mean along the high-water line. Moreover, in the plat drawing the surveyor interpreted this legal description to go to the then-existing shore of the

St. Croix. If the description in the dedication clause of the plat had been construed to go only to the high-water line of the St. Croix, it would have been incumbent on the surveyor to label the East boundary line of Lot 6 as the high-water line of the St. Croix.

We note also that there was absolutely no basis for the trial court to conclude that the Association owns the property between the high-water mark and the edge of the river. Even if Mooney's property rights extended only to the high-water mark, there was still no showing that the property below that mark was owned by the Association. The only evidence offered to buttress the Association's claim was a group of letters which were not received in evidence below and therefore may not be considered on appeal. *Plowman v. Copeland, Buhl & Company, Ltd.*, 261 N.W.2d 581, 583 (Minn.1977) (citing *Moose v. Vesey*, 225 Minn. 64, 29 N.W.2d 649 (1947)).

■ Given these facts regarding the certificate of title and the plat, we hold that Mooney's property extends to the low-water mark of Lake St. Croix. Because the trial court judgment granted the Association ownership of the property extending from the high-water mark of Mooney's lot to the edge of the St. Croix, we must next determine whether the trial court had the authority to issue an order that adversely affected Mooney's title.

A central purpose of the Torrens Act is conclusiveness and indefeasibility of title once adjudicated. *Murphy v. Borgen*, 148 Minn. 375, 377, 182 N.W. 449, 450 (1921); *see also In the Matter of the Petition of Brainerd National Bank for Issuance of New Certificate of Title*, 383 N.W.2d 284, 287 (Minn.1986) (trial court does not have

jurisdiction under Minn.R.Civ.P. 60.02 to vacate a torrens title decree for excusable neglect).

Minn.Stat. § 508.22 (1984) states that, except as otherwise provided,

> every decree of registration shall bind the land described in it, forever quiet the title to it, and be forever binding and conclusive upon all persons * * *. The decree shall not be opened, vacated, or set aside * * * by any proceeding at law or in equity for opening, vacating, setting aside, or reversing judgments and decrees, except as herein especially provided.

Mooney's property was registered through a torrens decree entered in 1975. Her title may not be set aside except as provided under the Torrens Act.[1] The trial court's judgment constituted an impermissible collateral attack on a torrens judgment. *See Northwest Holding Co. v. Evanson*, 265 Minn. 562, 568, 122 N.W.2d 596, 600 (1963) ("a decree of registration [is] a final adjudication of title which may not be attacked except under the limited circumstances set out in the law"). Because it did not comply with the Torrens Act, we hold that the court lacked the authority to render the judgment. However, because Mooney did not bring her appeal within the statutory time limits, the judgment may be set aside only if it is deemed void under Minn.R.Civ.P. 60.02(4).

■ A judgment is not void under Rule 60.02(4) simply because it was erroneous or based on an invalid claim. *Sheridan v. Sheridan*, 213 Minn. 24, 29, 4 N.W.2d 785, 788 (1942). However, the rule may be used to vacate judgments that are void due to a court's lack of jurisdiction. *See, e.g., Altman v. Levine & Tanz, Inc.*, 256 Minn. 48,

---

1. Minn.Stat. § 508.28 (1984) further provides that

> [n]o decree of registration * * * shall be adjudged invalid or set aside unless the action in which the validity of such decree * * * is called in question, be commenced * * * within six months from the date of such decree.

Because Mooney's torrens decree was entered well over six months before the trial court judg-

ment, her title would not be subject to attack even if the trial court did comply with the Torrens Act. *See Village of Savage v. Allen*, 255 Minn. 73, 78, 95 N.W.2d 418, 422 (1959) ("Normally, * * * land registration decrees or judgments are not subject to attack after 6 months from their entry").

97 N.W.2d 460 (1959). Because the trial court acted completely outside its authority in tampering with Mooney's torrens title, we hold that its judgment was tantamount to one rendered despite a lack of subject matter jurisdiction. Accordingly, we reverse and remand with instructions to vacate that part of the judgment adversely affecting Mooney's title.

## II

Mooney also challenges that part of the trial court's judgment ordering her to pay the assessments charged against her by the Association. Whether or not that part of the judgment was erroneous, there is no basis for finding that it is *void* for the purposes of Rule 60.02(4). The trial court clearly had jurisdiction to render this part of its judgment. Therefore, this part of the trial court's original judgment should not be vacated.

## DECISION

As indicated by her certificate of title and the plat of her property, Mooney's title extended to the low-water mark of Lake St. Croix. The trial court lacked authority to grant the Association ownership rights in that part of Mooney's property between the high-water mark and the St. Croix in derogation of the Torrens Act. Such action by the trial court was tantamount to granting a judgment without subject matter jurisdiction and therefore was void.

The trial court's order denying Mooney's motion to vacate the earlier judgment is reversed and remanded. On remand the trial court is instructed to grant Mooney's motion to vacate that part of its earlier judgment that granted the Association ownership of the property extending from the high-water mark of Mooney's lot to the low-water mark of Lake St. Croix (paragraph 3 of the judgment). The trial court is also instructed to direct the Washington County Registrar of Titles to delete from Mooney's torrens title the memorial indicating the judgment's existence. The trial court is further instructed to deny Mooney's motion to vacate the remaining parts of the earlier judgment, including that part awarding the Association $3,930.20 for assessments, interest, fees, costs and disbursements.

Reversed and remanded.